COMMONWEALTH of Kentucky DEPARTMENT OF HIGHWAYS, Appellant,

v.

Ottis LANTER et al., Appellee.

Court of Appeals of Kentucky.

May 15, 1964.

John B. Breckinridge, Atty. Gen., William A. Lamkin, Jr., Asst. Atty. Gen., Deddo G. Lynn, Dept. of Highways, Lexington, for appellant.

Ottis Lanter, William F. Threlkeld, Williamstown, Edwin R. Denney, Lexington, for appellees.

MOREMEN, Judge.

This is a highway condemnation suit. Appellee, Ottis Lanter, and his wife were owners of approximately 36 acres (we are going to disregard fractions) of land located on Barnes Road near the corporate limits of Williamstown. Appellees lived in a well-constructed house which had been built in 1951. It was connected with the road about 75 feet away by an adequate driveway.

The Commonwealth condemned 24 or 27 acres of this tract—there is a controversy about the quantity—but the house was not taken. It was necessary for the Commonwealth to condemn almost all the frontage on Barnes Road. The Department of Highways made a vertical cut within 40 feet of the house, about 28 feet in height. This had the effect of denying appellees access near their house to the new approach. In an attempt to mitigate the severity of this situation the Department built a 300 foot rock access road on its own right-of-way. This road runs parallel with the cut or cliff and 2 to 4 feet from its edge. No guardrails were constructed. In leaving by car from the Lanter home, one must back his car toward this vertical drop.

The commissioners appointed by the county court awarded appellees $5,438.00 for the land taken and $6,300.00 for damage to the remainder, or a total of $11,738.00. Both sides filed exceptions to the report. On the trial in the circuit court, appellees were awarded $6,000.00 for land taken and $6,500.00 for damage to the remainder, or a total of $12,500.00. The Commonwealth has appealed.

On this appeal it is insisted the court erred in that (1) appellees' witnesses were allowed to base their estimate as to the amount of land taken upon incompetent evidence; and (2) the verdict of the jury was so excessive as to appear to have been given under the influence of passion and prejudice.

It is argued that since a competent professional engineer, who testified for the Commonwealth, stated that 24 acres were being condemned, his testimony was accurate and should be controlling on the question of acreage. It was pointed out that appellees had stated that 27 acres were being acquired. This acreage figure had been taken from a Department of Highways map filed in the county tax commissioner's office for the purpose of showing how much land should be removed from the tax rolls and what remained to the individual owners along the right-of-way after part of their land had been condemned. It is insisted by the Commonwealth that the mathematical formula used by its witness for determining acreage is based upon scientific laws not known or used by the ordinary layman, and that when a proven expert has testified concerning such a matter his evidence may be refuted only by an opposing expert and not by a layman's confused statements.

We find it unnecessary to pass upon the question as to whether engineers or persons highly skilled in mathematical science are the only ones who are able to calculate the amount of acreage because in the case we have under submission it is not required. Most of the witnesses (the majority of those introduced by both sides were highly qualified real estate experts) placed no undue emphasis on the amount of the acreage. A reading of their testimony discloses that they were familiar with the boundary of the farm and recognized the amount of ground that was to be taken. It was upon this familiarity that they based their estimate or opinion as to the fair market value of the property before and after the taking. In addition, it was not shown in this record that the map, from which appellee Lanter testified, was, in fact, inaccurate. There were some suggestions during the course of the trial that the Department of Highways changes its plans from time to time and draws new maps, but there was no definite proof that this had been done with this particular map. Lanter, an attorney, had practiced law in the community for about twelve years, handled the legal end of real estate transactions and had more than an ordinary person's understanding of real estate descriptions and values in the community. Although the question as to the amount of ground taken was vigorously contested at the time Lanter was on the witness stand, it was not pursued thereafter. Three eminently qualified witnesses introduced in behalf of appellees stated, without objection by the Commonwealth, that 27 acres of land had been taken. Nor did the Commonwealth request a special instruction on this point (in fact the case was submitted to the jury under instructions offered by the Commonwealth) and we do not believe that it was a real issue in the case. Both parties were directly concerned with the difference between the true market value of the land before and after the taking. This case was tried on February 22, 1962, before the opinion was rendered in Commonwealth Dept. of Highways v. Sherrod, Ky., 367 S.W.2d 244 (decided March 22, 1963) wherein the distinction between the taking damages and the resulting damages was abolished. That opinion specifically states that it was to have only prospective application. The witnesses in the instant case separated the damages and the amount of the taking and arrived correctly, we think, at the difference between the market value of the property before and after the condemnation.

Appellant's second ground of appeal is excessiveness of the verdict—$12,500.00. The Commonwealth's witnesses testified that the differences in before and after values were $4,275.00; $6,690.00; $4,950.00.

 

The landowners' witnesses testified to the following differences in market value: $15,-675.00; $15,391.12; $14,500.00; $14,000.00.

The amount of the verdict was within the limits of the testimony and we believe that it was a fair valuation.

The judgment is affirmed.